

ORDERED in the Southern District of Florida on March 16, 2016.

Erik P. Kimball, Judge
United States Bankruptcy Court
_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | Chapter 11 |
| FOUNTAINS OF BOYNTON ) | |
| ASSOCIATES, LTD., ) | |
| ) | Case No. 16-11690-EPK |
| ) | |
| Debtor. ) | |
| ) | |

**SECOND INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION
FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363**

Fountains of Boynton, Ltd. ("Debtor"), a Florida limited partnership, filed its *Emergency Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and for Final Hearing* (the "Motion") [ECF No. 17] seeking authority to utilize the cash collateral (as such term is defined in 11 U.S.C. § 363(a), hereinafter, "Cash Collateral") of Hanover Acquisition 3, LLC

("Lender"). Following a hearing held on February 16, 2016, the Court entered an interim order granting the Motion, and permitting the Debtor to use cash collateral through March 15, 2016. ECF No. 30. Pending a final hearing on the Motion, the parties have advised the Court that the Lender has agreed to the Debtor's use of cash collateral through April 15, 2016, subject to certain terms and conditions. Upon such agreement, the Court hereby finds, decrees and orders as follows:

1.

Lender has consented to Debtor's continued use of a limited amount of Cash Collateral, as such term is hereinafter defined, for a specified period of time on the express terms and conditions set forth in this Order. Accordingly, Debtor shall be authorized to use Cash Collateral subject to the following conditions:

A.  Debtor shall establish or cause to be established the following post-petition bank accounts, which accounts shall be designated as Debtor-In-Possession Accounts (collectively, the "Accounts"):

(1) Cash Collateral Account: an account into which all post-petition rents, fees, charges, accounts, credit card or other payments, all other revenues derived from the real property that is part of the development commonly known as Fountains of Boynton in Boynton Beach, Palm Beach, Palm Beach County, Florida, which property is more particularly described in that certain Amended, Restated, Consolidated and Renewal Mortgage and Security Agreement with Assignment of Rents and Fixture Filing executed on or about December 28, 2006 by Debtor in favor of Lender and recorded on December 29, 2006 at Book 21252, page 0518, Official Records of Palm Beach County, State of Florida (such mortgage, the "Mortgage") (such property, the "Mortgaged Property") and

any other Cash Collateral shall be deposited; and

(2)     Tax and Insurance Account.  An account in which is held accrued estimated taxes and insurance premiums for the next period, provided that Debtor shall accrue no more for any tax or premium (that is not paid on a monthly basis to an insurance premium financing company) in a given month than is derived by dividing the estimated tax or premium obligation to be paid divided by twelve (12).

B.     Debtor shall only establish its accounts at banks that: (1) are insured by the Federal Deposit Insurance Corporation; (2) are not a creditor of Debtor; and (3) are a United States Trustee authorized depository.  Debtor's accounts shall be maintained as interest-bearing accounts, if such interest-bearing accounts are available.

C.     From the Cash Collateral Account, Debtor may pay or accrue for the payment of the operating expenses of the Mortgaged Property as set forth in the budget attached to the Motion as Exhibit "A" (the "Budget").  Debtor may not make payments exceeding the amounts or for purposes other than those set forth in the Budget except to the extent that (i) the Lender has agreed in writing in advance, (ii) the Court authorizes such payments in an Order following notice and opportunity for a hearing, or (iii) solely with respect to payments exceeding the amounts set forth in the Budget, Debtor does not pay (a) more than 110% for any line item set forth in the Budget in any given month, and (b) more than 110% of the aggregate total amount set forth in the Budget for any given month.  The foregoing notwithstanding, Debtor shall pay utilities, utility deposits, taxes, insurance, and U.S. Trustee fees in their actual amount.  Debtor shall not pay any items from the Cash Collateral Account (i) not contained in the Budget, except for incidental expenses not greater than $1,000 each and $3,000 in the aggregate, or (b) in advance of the month in which the particular item is scheduled to be paid, except for incidental

expenses not greater than $1,000 each and $3,000 in the aggregate. Debtor warrants and represents that the Budget includes all estimated reasonable, necessary, and foreseeable expenses to be incurred in the ordinary course of business in connection with the operation of its business for the period set forth in the Budget.

D. Subject to further order of the Court, the Cash Collateral may not presently be used to pay fees or expenses incurred by any entity, including without limitation Debtor or any Official Committee of Unsecured Creditors (a "Committee") and professionals retained by Debtor or a Committee. Nothing herein shall be construed as consent to the allowance of any fees, costs or expenses of the professionals retained by Debtor or a Committee or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses. Moreover, although Lender is not seeking, in this interim Order, a waiver of Debtor or any trustee's ability to surcharge Lender's collateral pursuant to Section 506(c) of the Bankruptcy Code, Lender will require this waiver as a condition to any final Order approving Debtor's use of Cash Collateral being entered on a consensual basis. Nothing herein shall be deemed or construed as Lender's consent to any surcharge of its collateral pursuant to Section 506(c) of the Bankruptcy Code.

E. Debtor agrees to keep the Mortgaged Property insured against all insurable hazards and liabilities, in amounts and in accordance with the provisions of the Mortgage, that certain related Amended, Restated Consolidated and Renewal Note dated December 28, 2006 in the original principal amount of Fifty Million and 00/100 Dollars ($50,000,000.00) executed by Debtor (the "Note") and any related loan documents (collectively, the "Loan Documents") or as otherwise required by law, and to provide proof thereof to Lender at its request.

F. On or before the 1st day of each month beginning on March 1, 2016, Debtor shall

transmit to Lender a payment in the amount of $75,000.00, which shall be deemed "adequate protection" (as such term is defined in Section 361 of the Bankruptcy Code) that, pursuant to Section 363(e) of the Bankruptcy Code, is necessary and appropriate as a condition to Debtor's use of Cash Collateral (each such monthly adequate protection payment amount, an "Adequate Protection Payment"). Lender shall apply the Adequate Protection Payment to the prepetition interest owed on the Note. By receiving and applying any Adequate Protection Payment to the outstanding balance on the Note, Lender shall not be deemed to have consented to any modification, amendment, reinstatement, deceleration of the loan balance or similar concept with respect to the loan (the "Loan") owed by Debtor to Lender under the Loan Documents.

G. As additional Adequate Protection for Lender, on or before the 10th day of each month beginning in March of 2016 the Debtor shall provide the following (collectively, the "Adequate Protection Reports"):

(i) a report containing substantially the same information and detail as the Budget that reflects the actual uses of Cash Collateral during the prior calendar month and compares them to the amounts set forth in the Budget;

(ii) a report containing detailed information regarding revenues and expenses, including, at a minimum, amounts, dates and payor/payee information;

(iii) copies of the most recent bank statements for each of the Accounts; provided, however, that the Debtor shall provide copies of bank statements for each of the Accounts twice per month if such statements are available;

(iv) a rent roll report for the prior month (if not already provided) and the then current month (each such rent roll report shall include the tenant names, the date of the lease, the date of the lease expiration, the amount of any payment delinquency by tenant

and, with respect to the lease with Publix as a tenant, an accounting of the reimbursement by Publix to Debtor for taxes related to the parcel leased by Publix as set forth in the Publix lease).

H.    As additional Adequate Protection for Lender, Debtor shall provide the following to Lender within fourteen (14) days of entry of this Order (collectively, the "Lender Required Reports"):

(i)    Debtor's monthly and annual profit and loss statements, income statements, cash flow statements and balance sheets for the period of time beginning January 1, 2015 through and including the Petition Date (as such term is defined below);

(ii)    a report accounting for revenues and expenditures for the period of time beginning on January 1, 2015 through and including February 5, 2016, the date that Debtor commenced this bankruptcy case (the "Petition Date");

(iii)    a report identifying any transfers of Debtor's money (by date, amount and transferee name) to any Debtor affiliated entities, entities with ownership in common with Debtor, any "insider" (as such term is defined in 11 U.S.C. § 101(31)) of Debtor, or any person or entity that did not, in the ordinary course of business, supply goods or services to Debtor warranting compensation in exchange for such goods or services in the amount actually paid to such person or entity;

(iv)    rent rolls for the Mortgaged Property for the period of time beginning on January 1, 2015 through and including the Petition Date (Debtor should also provide copies of any leases requested by Lender within two (2) business days of any such request);

(v)    copies of bank statements for all of Debtor's accounts for the period of

time from January 1, 2015 through and including the Petition Date; and

      (vi)    a copy of Debtor's most recently filed tax return.

The deadline to produce any of the Adequate Protection Reports can be extended by agreement of Lender and/or the Court may extend the deadline after notice and a hearing if cause exists to extend same.

2.

Debtors authority to use Cash Collateral pursuant to the terms of this Order shall expire on the earlier of the following dates (the "Expiration Date"):  (a) April 15, 2016, (b) the date on which a final or subsequent cash collateral order shall be entered by the Court, (c) entry by the Court of an order denying Debtor's authorization to use the Cash Collateral, (d) at the option of Lender, upon occurrence of an Event of Default after written notice to Debtor's counsel and the expiration of the applicable cure period, as set forth in Paragraph 5, or (e) a date, past April 15, 2016, consented to in writing by Lender.

3.

In addition to the existing rights and interests of Lender in the Cash Collateral and for the purpose of attempting to provide adequate protection for the interests of Lender, Lender is hereby granted, as security for the amount of Cash Collateral used by Debtor, a valid, perfected, and enforceable security interest (the "Replacement Liens") in and upon all assets of Debtor created after the Petition Date of the type as to which, and to the extent to which, Lender had a valid, perfected, and enforceable security interest immediately before the Petition Date, which Replacement Liens shall be subject only to any properly perfected senior liens as such interests existed on the Petition Date.

4.

Subject to Paragraph 3, above, the Replacement Liens herein granted: (i) are and shall be in addition to all security interests, liens, rights of setoff existing in favor of Lender on the Petition Date; (ii) are and shall be valid, perfected, enforceable and effective as of the date of the entry of the this Order without any further action by Debtor or Lender and without the necessity of the execution, filing, or recordation of any financing statements, security agreements, vehicle lien applications, mortgages or other documents; and (iii) shall secure the payment of indebtedness to Lender in an amount equal to the aggregate Cash Collateral used or consumed by Debtor.

5.

An Event of Default shall occur under the following circumstances:

A. if Debtor fails to cure any of the following defaults within three (3) days after receipt by Debtor's counsel of written notice from Lender or Lender's counsel:

(i) failure to pay an Adequate Protection Payment when due;

(ii) failure to provide to Lender any Adequate Protection Reports when due;

(iii) failure to provide to Lender any of the Lender Required Reports when due; or

(iv) failure to satisfy any other monetary obligation due Lender under this Order, any other Order of the Court, or the Bankruptcy Code.

Upon the occurrence of any Event of Default by Debtor under the terms of this Order which remains uncured after notice, Debtor's right to use Cash Collateral shall cease and terminate immediately without further notice by Lender and, in addition, Lender and/or the Debtor shall be entitled to apply to the Bankruptcy Court for whatever relief it deems appropriate.

6.

Lender may waive any Event of Default hereunder after the same has been declared without impairing its right to declare a subsequent Event of Default hereunder and without any further notice by Lender that Debtor must strictly comply with the obligations imposed hereunder.

7.

Debtor shall not be permitted or authorized to use Cash Collateral other than as expressly authorized by an Order of this Court or the written consent of Lender.

8.

The entry of this Order shall in no way constitute: (a) a preclusion or a waiver of any right of Lender to file any motions in this case; or (b) agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Order; or (c) preclusion or waiver of right of Lender to assert any other rights, causes of action, remedies, or defenses available to Lender or to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Lender; (d) a preclusion or waiver of any right of Debtor to assert any defenses, rights, remedies or causes of action against Lender, its agents, or any other party or to file or continue to prosecute any motion or adversary proceeding other than as expressly prohibited by the terms of this Order; (e) consent to Debtor's use of Cash Collateral to pay attorney's or other professional fees, other than fees of the U.S. Trustee, or consent to the allowance of any attorneys' fees or fees of other professionals of Debtor; or (f) consent by Lender to Debtor's use of Cash Collateral for any period of time after the Expiration Date.

9.

Debtor, the Committee, if any, and all other parties in interest, shall have until ninety (90) days from the Petition Date, or such additional time as may be (i) agreed by the Committee, if any, Debtor, and Lender or (ii) ordered by the Court within which to file an adversary proceeding contesting the validity, extent, perfection, priority, and/or avoidability of any of Lender's liens securing Debtor's obligations to Lender under the Loan Documents (such deadline, the "Bar Date").  If no adversary proceeding is filed prior to the Bar Date, this Order will automatically constitute a final determination by the Court that:

    A.    the Mortgage, the Note and the other Loan Documents are, in all respects, valid and binding agreements, conveyances, and obligations of Debtor; and

    B.    the liens and security interests held by Lender under the Loan Documents are valid, enforceable, properly perfected and non-avoidable and that, in accordance therewith, the Lender and its agents shall be entitled to continue to charge to the account of Debtor and to pay in accordance with the terms of the Loan Documents all fees, expenses, and other costs owing as of the Petition Date and that may otherwise arise in the normal course of Debtor's business during this chapter 11 case.

10.

This Order in no way constitutes a waiver or forgiveness by Lender of existing defaults by Debtor under the terms of the Loan Documents and does not constitute a waiver by Lender of the remedies exercised by or available to it under the Loan Documents or under applicable law.

11.

The provisions of this Order shall be binding upon and inure to the benefit of Lender and Debtor and their respective successors and assigns.

{2056/000/00321940}

12.

Nothing contained in this Order shall be construed as creating a joint venture or partnership among Debtor, on the one hand, and Lender or any affiliates or agents thereof, on the other hand. There shall be no sharing of losses, costs, and expenses among Debtor and Lender, and Lender shall not have any right of control or supervision over Debtor, except as provided hereunder or through further order of this Court.

13.

Lender shall have no obligation to make any payment or any liability for payment or nonpayment, of any expenses or other obligations of Debtor, including without limitation those related to the Mortgaged Property, except as provided in its Loan Documents. Specifically, Lender shall not have any obligation or liability for, among other things, payment of payroll or other taxes applicable to the Mortgaged Property, and Debtor shall pay all such payroll and other taxes and charges when and as they become due.

14.

All notices required or permitted under this Order shall be sent to the respective party and attorney at the address listed below by certified mail, return receipt requested, or by facsimile transmission. In the event of notice by certified mail, notice shall be effective upon receipt or refusal of delivery as shown by the return receipt. In the event of notice by facsimile transmission, notice shall be effective upon successful facsimile transmission.

If notice is to be given to Lender it shall be sent to:

> Sara F. Holladay-Tobias
> Emily Y. Rottmann
> Courtney A. McCormick
> McGuireWoods LLP
> 50 N. Laura Street, Suite 3300
> Jacksonville, Florida 32202

{2056/000/00321940}

(904) 798-3200  
(904) 798-3207 (fax)  
sfhollad@mcguirewoods.com  
erottmann@mcguirewoods.com  
emccormick@mcguirewoods.com  

-and-

Thomas R. Walker, Esq.  
McGuireWoods LLP  
1230 Peachtree Street, N.E.  
Suite 2100  
Atlanta, Georgia 30309  
(404) 443-5705  
(404) 443-5763 (fax)  
trwalker@mcguirewoods.com  

If notice is to be sent to Debtor, it shall be sent to:

Bradley S. Shraiberg  
Patrick Dorsey  
Shraiberg, Ferrara & Landau, P.A.  
2385 NW Executive Center Drive, #300  
Boca Raton, Florida 33431  
(561) 443-0800  
(561) 998-0047 (fax)  
bshraiberg@sfl-pa.com  
pdorsey@sfl-pa.com  

15.

Except as expressly provided in this Order, nothing herein contained shall be construed to alter, modify, or change in any respect, the terms and conditions of the Loan Documents.

16.

Nothing herein contained shall be in prejudice to the right of Lender or Debtor to seek modification or termination of the Order based upon a change in circumstances.

17.

Pursuant to Section 363(e) of the Bankruptcy Code, this Court conditionally authorizes Debtor to use Cash Collateral on a preliminary basis, in accordance with the terms of this Order.

{2056/000/00321940}

If any or all of the provisions of this Order are hereafter modified, vacated or stayed by any Order of this Court or any other court, any Cash Collateral used by Debtor pursuant to this Order prior to the effective date of such modification, stay or vacation shall be governed in all respects by the provisions of this Order.

# # #

*Submitted by:*

SHRAIBER, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
(561) 443-0800
(561) 998-0047 (fax)
bshraiberg@sfl-pa.com
pdorsey@sfl-pa.com

By: /s/ Bradley S. Shraiberg
  Bradley S. Shraiberg
  Florida Bar No. 121622
  Patrick Dorsey
  Florida Bar No. 0085841

*Consented to by:*

MCGUIREWOODS LLP
50 N. Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
sfhollad@mcguirewoods.com
erottmann@mcguirewoods.com
emccormick@mcguirewoods.com

By: /s/ Courtney A. McCormick
  Sara F. Holladay-Tobias (FL Bar No. 26225)
  Emily Y. Rottmann (FL Bar No. 93154)
  Courtney A. McCormick (FL Bar No. 92879)

*Attorneys for Creditor Hanover Acquisition 3 LLC*

Bradley Shraiberg, Esq. is directed to serve copies of this Order upon all interested parties and to file a certificate of service with the Court.

{2056/000/00321940}