UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

FOUNTAINS OF BOYNTON                    Case No. 16-11690-EPK
ASSOCIATES, LTD.,

    Debtor.                             Chapter 11
_____/

**DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION**
**PROPOSED BY FOUNTAINS OF BOYNTON ASSOCIATES, LTD.**

May 5, 2016

Bradley S. Shraiberg, Esq.
Patrick Dorsey, Esq.
SHRAIBERG, FERRARA & LANDAU, P.A.
2385 NW Executive Center Drive, Ste. 300
Boca Raton, FL 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047
Email: bshraiberg@sfl-pa.com
Email: pdorsey@sfl-pa.com

**ATTORNEYS FOR THE DEBTOR**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 5 |
| | A. Overview of the Plan | 7 |
| | B. Voting Instructions | 8 |
| II. | BACKGROUND OF DEBTOR | 8 |
| III. | THE CHAPTER 11 CASE | 9 |
| | A. Commencement of the Chapter 11 Case | 9 |
| | B. Retained Professionals | 9 |
| | C. The Claims Process | 9 |
| IV. | CHAPTER 11 PLAN | 9 |
| | A. Plan Overview | 10 |
| | B. Unclassified Claims | 10 |
| |    1. Allowed Administrative Claim | 10 |
| |    2. Priority Tax Claims | 10 |
| |    3. United States Trustee's Fees | 10 |
| | C. Treatment of Claims | 10 |
| |    1. Class 1 – *Allowed Hanover Secured Claim* (Impaired; therefore, entitled to vote to accept or reject the Plan) | 11 |
| |    2. Class 2 – *Allowed Hessler Paint Claim* (Impaired; therefore, entitled to vote to accept or reject the Plan) | 11 |
| |    3. Class 3 – *Allowed Secured Taxing Authority Claims* (Impaired; therefore, entitled to vote to accept or reject the Plan) | 12 |
| |    4. Class 4 - *Allowed General Unsecured Claims* (Impaired; therefore, entitled to vote to accept or reject the Plan) | 12 |
| |    5. Class 5 - *Allowed Equity Interests* (Impaired but Insider Claims; therefore, entitled to vote to accept or reject the Plan) | 12 |
| | D. Distributions Under the Plan | 103 |
| | E. Procedures for Allowance or Disallowance of Disputed Claims | 13 |
| |    1. Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims | 14 |
| |    2. Unclaimed Funds | 14 |
| |    3. Establishment and Maintenance of Reserve | 14 |
| |    4. Distributions Upon Allowance of Disputed Claims | 14 |
| | F. Executory Contracts and Unexpired Leases | 114 |
| | G. Amendment, Modification or Revocation of the Plan | 15 |
| | H. Means for Implementation and Effect of Confirmation of Plan | 15 |
| |    1. Discharge of Debtor | 15 |
| |    2. Injunction Related to Discharge | 16 |
| |    3. Injunction Against Interference with the Plan | 16 |

        4.      Votes Solicited in Good Faith .................................................................16

        5.      Term of Bankruptcy Injunction or Stays ..............................................16

        6.      Avoidance Actions

I.      Conditions Precedent to Effectiveness of Plan .............................................17

J.     Retention of Jurisdiction ...............................................................................17

K.    Post-Confirmation Date Service List .............................................................19

V.     CONFIRMATION OF THE PLAN .................................................................................19

A.    Solicitation of Votes ......................................................................................19

B.    Confirmation Hearing ....................................................................................19

C.    Confirmation Standards .................................................................................20

VI.    Funding and feasibility of the Plan ..............................................................................20

A.    Risks to the Creditors ....................................................................................20

B.    Best Interests Test and Liquidation Analysis ................................................20

C.    Feasibility ......................................................................................................21

CONCLUSION .......................................................................................................................22

## EXHIBIT INDEX

EXHIBIT A:         Chapter 11 Plan Filed by Fountains of Boynton Associates, Ltd.

**DISCLOSURE STATEMENT FOR CHAPTER 11 PLAN OF REORGANIZATION
PROPOSED BY FOUNTAINS OF BOYNTON ASSOCIATES, LTD.**

> **THE DEBTOR RESERVES THE RIGHT TO AMEND OR SUPPLEMENT THIS
> PROPOSED DISCLOSURE STATEMENT AT OR BEFORE THE CONFIRMATION
> HEARING.**

## I.    INTRODUCTION

Fountains of Boynton Associates, Ltd. (the ""Debtor" or Plan Proponent") provides this Disclosure Statement (the "Disclosure Statement") to all of Debtor's creditors in order to permit such creditors to make an informed decision in voting to accept or reject the Chapter 11 Plan Proposed By the Debtor (the "Plan") filed on May 5, 2016 with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") in connection with the above-captioned case (the "Chapter 11 Case"). A copy of the Plan is attached to this Disclosure Statement as **EXHIBIT A**. Whenever the words "include," "includes" or "including" are used in this Disclosure Statement, they are deemed to be followed by the words "without limitation."

The Disclosure Statement is presented to certain holders of Claims[1] against the Debtor in accordance with the requirements of section 1125 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). Section 1125 of the Bankruptcy Code requires that a disclosure statement provide information sufficient to enable a hypothetical and reasonable investor, typical of the Debtor's creditors, to make an informed judgment whether to accept or reject the Plan. The Disclosure Statement may not be relied upon for any purpose other than that described above.

**THE DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE, AND THEY MUST BE CONSIDERED TOGETHER FOR THE READER TO BE ADEQUATELY INFORMED. THIS INTRODUCTION IS QUALIFIED IN ITS ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT, AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN.**

**NO REPRESENTATIONS CONCERNING DEBTOR (PARTICULARLY AS TO THE VALUE OF HIS PROPERTY) ARE AUTHORIZED BY PLAN PROPONENT OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT AND ITS EXHIBITS SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR PLAN PROPONENT, WHO WILL IN TURN DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

---

[1] Capitalized terms used herein but not otherwise defined have the meanings assigned to such terms in the Plan.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT, INCLUDING ANY EXHIBITS CONCERNING THE FINANCIAL CONDITION OF DEBTOR AND THE OTHER INFORMATION CONTAINED HEREIN, HAS NOT BEEN SUBJECT TO AN AUDIT OR INDEPENDENT REVIEW EXCEPT AS EXPRESSLY SET FORTH HEREIN.  ACCORDINGLY, THE PLAN PROPONENT IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONCERNING DEBTOR OR HIS FINANCIAL CONDITION IS ACCURATE OR COMPLETE.    THE PROJECTED INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PRESENTED FOR ILLUSTRATIVE PURPOSES ONLY, AND, BECAUSE OF THE UNCERTAINTY AND RISK FACTORS INVOLVED, THE PLAN PROPONENT'S ACTUAL RESULTS MAY NOT BE AS PROJECTED HEREIN.

ALTHOUGH AN EFFORT HAS BEEN MADE TO BE ACCURATE, PLAN PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND ITS EXHIBITS ARE CORRECT.  THE DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  EACH CREDITOR IS STRONGLY URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THE DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS NOT BEEN ANY CHANGE IN THE FACTS SET FORTH SINCE THE DATE OF THE DISCLOSURE STATEMENT.

A STATEMENT OF THE ASSETS AND LIABILITIES OF DEBTOR AS OF THE DATE OF THE COMMENCEMENT OF THE CHAPTER 11 CASE IS ON FILE WITH THE CLERK OF THE BANKRUPTCY COURT AND MAY BE INSPECTED BY INTERESTED PARTIES DURING REGULAR BUSINESS HOURS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.  ENTITIES HOLDING OR TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT ONLY IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS SUCH COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT WILL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE PLAN. EACH CREDITOR SHOULD, THEREFORE, CONSULT WITH ITS OWN LEGAL,

**BUSINESS, FINANCIAL AND TAX ADVISERS AS TO ANY SUCH MATTERS CONCERNING THE SOLICITATION, THE PLAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.**

Pursuant to the Bankruptcy Code, the Plan was filed with the Bankruptcy Court on May 5, 2016 and this Disclosure Statement was filed thereafter. The Bankruptcy Court will schedule a hearing on approval of this Disclosure Statement and on confirmation of the Plan (the "Confirmation Hearing") to be held at the United States Courthouse, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. At the Confirmation Hearing, the Bankruptcy Court will consider whether this Disclosure Statement and the Plan satisfy the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the claimants.

To obtain, at your cost, additional copies of this Disclosure Statement or of the Plan, please contact Shraiberg, Ferrara & Landau, P.A., 2385 NW Executive Center Drive, Suite 300, Boca Raton, FL 33431, Phone: (561) 443-0800, Facsimile: (561) 998-0047.

A.    **Overview of the Plan**

**THE DESCRIPTION OF THE PLAN SET FORTH HEREIN CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN AND THE PLAN DOCUMENTS.    THE PLAN IS ATTACHED AS EXHIBIT A TO THIS DISCLOSURE STATEMENT. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

Chapter 11 is the chapter of the Bankruptcy Code primarily used for reorganization. The fundamental purpose of a chapter 11 case is to formulate a plan to restructure a debtor's finances so as to maximize recoveries to its creditors. With this purpose in mind, individuals and businesses sometimes use chapter 11 as a means to conduct asset sales and other forms of liquidation. Whether the aim is reorganization or liquidation, a chapter 11 plan sets forth and governs the treatment and rights to be afforded to creditors and stockholders with respect to their claims against and interests in a debtor's bankruptcy estate.

The Plan divides the Claims against the Debtor into Classes. Certain Claims—in particular, Administrative Claims—remain unclassified in accordance with section 1123(a)(1) of the Bankruptcy Code. The Plan assigns all other Claims and Interests as described below.

| Class | Description | Approximate Amount Asserted | Estimated Allowed Amounts | Estimated Recovery | Status |
|-------|-------------|------------------------------|----------------------------|--------------------|--------|
| N/A | Administrative Claims | Unknown | Unknown | 100% | Unclassified and not entitled to vote |
| N/A | Priority Claims | $0.00 | $0.00 | 100% | Unclassified and not entitled to vote |
| N/A | US Trustee's Fees | $4,875.00 | $4,875.00 | 100% | Unclassified and not entitled to vote |
| 1 | Hanover Secured Claim | $47.6 million | $47.6 million | 100% | Impaired |
| 2 | Hessler Paint Secured Claim | $20,000.00 | $20,000,00 | 100% | Impaired |
| 3 | Allowed Secured Taxing Authority Claims | Unknown | Unknown | 100% | Impaired |
| 4 | General Unsecured Claims | $1.6 million | $1.6 million | 100% | Impaired |
| 5 | Equity | N/A | N/A | 100% | Impaired |

**B.    Voting Instructions**

The Bankruptcy Code entitles only holders of impaired claims who receive some distribution under a proposed plan to vote to accept or reject that plan. Holders of claims that are unimpaired under a proposed plan are conclusively presumed to have accepted that plan and are not entitled to vote on the Plan. Holders of classes of claims that will receive no distributions under a proposed plan are deemed to reject that plan and, therefore, not entitled to vote on the Plan. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan. Under the Plan, Classes 1, 2, 3 and 4 are impaired and entitled to vote on the Plan. Class 5 consists of insider claims, and its votes are therefore not calculated when determining whether the Plan has been accepted or rejected.

## II.    BACKGROUND OF DEBTOR

On February 5, 2016, the Debtor filed a petition for chapter 11 bankruptcy. The Debtor, a single asset limited partnership, owns real property that is part a shopping mall commonly known as the Fountains of Boynton, which is located at the northwest corner of Jog Road and Boynton Beach Boulevard, in Boynton Beach, Florida. The Debtor believes the real property to be worth in excess of $70 million.

Prior to the Debtor filing for bankruptcy protection, a judgment creditor garnished one of the Debtor's bank accounts for several hundred thousand dollars. Although the Debtor ultimately paid that judgment creditor in full, the garnishment produced temporary cash flow problems and defaults with other creditors, which in turn prompted the Debtor's chapter 11 filing.

## III.    THE CHAPTER 11 CASE

**A.    Commencement of the Chapter 11 Case**

As set forth in § II above, the Debtor filed for chapter 11 bankruptcy in order to resolve temporary cash flow issues that were caused by a garnishment of one of its bank accounts. The garnishing creditor was paid in full prior to the bankruptcy filing.

**B.    Retained Professionals**

The Debtor has sought and obtained the Court's approval to employ the law firm of Shraiberg, Ferrara & Landau, P.A. as bankruptcy counsel for the Debtor [ECF Nos. 24 and 52], in connection with the case. The Debtor may seek to employ additional professionals in connection with the Case.

**C.    The Claims Process**

The Bankruptcy Code provides a procedure for all persons who believe they have a claim against a debtor to assert such claims, so that such claimant can receive distributions from the debtor's bankruptcy case. The Court establishes a "bar date"—a date by which creditors must file their claims, or else such creditors will not participate in the bankruptcy case or any distribution. After the filing of all claims, the debtor evaluates such claims and can raise objections to them. These claims objections allow the debtor to minimize claims against it, and thereby maximize the recovery to creditors.

The deadline for filing proofs of Claims against the Debtor, other than claims of governmental units and Administrative Claims shall be the last date for creditors to file Proofs of Claim in the Case (the "General Bar Date").

The Debtor will review, analyze and resolve Claims on an ongoing basis as part of the claims reconciliation process. Nonetheless, additional claims may be asserted against the Debtor subsequent to the expiration of the general Bar Date and the actual ultimate aggregate amount of Allowed Claims may differ significantly from the amounts used for the purposes of the Plan Proponent's estimates. Accordingly, the distribution amount that will ultimately be received by any particular holder of an Allowed Claim may be adversely affected by the outcome of the claims resolution process.

## IV.    CHAPTER 11 PLAN

**THE FOLLOWING IS A BRIEF SUMMARY OF THE MORE SIGNIFICANT MATTERS CONTEMPLATED BY OR IN CONNECTION WITH THE CONFIRMATION OF THE PLAN. THUS, THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT AS EXHIBIT A. THIS SUMMARY ONLY HIGHLIGHTS CERTAIN SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, YIELD A THOROUGH UNDERSTANDING OF THE PLAN. SUCH CONSIDERATION IS NOT A SUBSTITUTE FOR A FULL AND COMPLETE READING OF THE PLAN. ALL HOLDERS OF CLAIMS ARE URGED TO REVIEW THE PLAN CAREFULLY. THE**

**PLAN, IF CONFIRMED, WILL BE BINDING ON DEBTOR AND ALL HOLDERS OF CLAIMS.**

**A.      Plan Overview**

The Plan Proponent believes that confirmation of the Plan provides the best opportunity for maximizing recoveries for Creditors. Through the Plan, all creditors will be paid 100% of their claim amounts.

**B.      Unclassified Claims**

**1.      Allowed Administrative Claims**

Allowed Administrative Claims shall be paid upon the date on which such Claims become due in the ordinary course, in accordance with the terms and conditions of any agreement relating thereto or upon such other dates and terms as may be agreed upon by the holders of such Allowed Administrative Claims. All other holders of Allowed Administrative Claims (with the exception of the professionals who will be paid 100% of the amount allowed by the Bankruptcy Court upon application to the Bankruptcy Court and those Claims otherwise specifically dealt with in the Plan) shall be paid 100% of their respective Allowed Administrative Claims in cash, unless otherwise ordered by the Bankruptcy Court, upon the latter of (i) the Effective Date, or, (ii) the date on which an order approving payment of such Administrative Claim becomes a Final Order.

**2.      Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim under § 507(a)(8) of the Code has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall be paid in the ordinary course of Debtor's business on the date of assessment of such Claim.

**3.      United States Trustee's Fees**

The Reorganized Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) through Confirmation on the Effective Date. The Reorganized Debtor shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) for post-confirmation periods within the time periods set forth in 28 U.S.C. §1930(a)(6), until the earlier of the closing of this Case by the issuance of a Final Decree by the Court, or upon entry of an order of this Court dismissing this Case, or converting this Case to another chapter under the Code, and the Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment an appropriate affidavit indicating disbursement for the relevant periods.

**C.      Treatment of Claims**

**Class 1.  Allowed Hanover Secured Claim**

(a)      Description. Class 1 consists of the Allowed Secured Claim of Hanover in the approximate amount of $47,588,140.17 as of May 3, 2016.

(b)    Treatment. On the Effective Date, Class 1 shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such claim: (i) payments made on account of its claim pursuant to the Court's Orders granting use of cash collateral [ECF Nos. 30, 50 and 64]; (ii) monthly payments for a period of 3 years, with an interest rate of 0.5% over prime or as otherwise determined by the Court, on the Allowed Amount of such Claim, with interest only payments during the first eighteen (18) months, and after principal and interest payments during the next eighteen (18) months, amortized over twenty (20) years, which amortization (as between principal and interest) will be adjusted upon the occurrence of each additional principal payment discussed in the next subsection, with a balloon payment at the end of the third year, and (iii) on January 31, 2017 and at the end of each 12 month period following such January 31, 2017 during which there are payments due under the Plan, the Debtor shall make an additional principal payment of net profit in excess of a reserve amount set forth in the projection to be filed with the Court as described in the Disclosure Statement, after payment of all current operating expenses and payments under the Plan. Payments of such excess principal amounts during the aforementioned three year period shall be applied towards principal. The foregoing payments will be generated from the Debtor's business operations. The Debtor is permitted to prepay without penalty. Loan documents relating to the Allowed Hanover Secured Claim are modified to eliminate any provisions regarding: (i) prepayment premiums or penalties; (ii) yield maintenance; and (iii) any financial defaults based upon any financial ratios.

(c)    Impairment. The Class 1 Claim is Impaired.

**Class 2. Allowed Hessler Paint Claim**

(a)    Description. Class 2 consists of the Allowed Secured Claim of Hessler Paint in the approximate amount of $19,259.04 as of May 4, 2016.

(b)    Treatment.  On the Effective Date, Class 2 shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of such claim, equal payments of principal and interest, with an applicable interest rate of 0.5% over prime or as otherwise determined by the Court, for a period of three years, in an amount that provides the holder of the Allowed Hessler Paint Claim the total amount of its Allowed Amount, with no prepayment penalty.

(c)    Impairment. The Class 2 Claim is Impaired.

**Class 3.  Allowed Secured Taxing Authority Claims**

(a)    Description. Class 3 consists of the Allowed Secured Taxing Authority Claims.

(b)    Treatment.  On the Effective Date, Class 3 shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, equal payments of principal and interest, with an applicable interest rate of 0.5% over prime or as otherwise determined by the Court, for a period of three years, in an amount that provides each holder of an Allowed Secured Taxing Authority Claim the total amount of its Allowed Amount, with no prepayment penalty.

(c)    Impairment. The Class 3 Claims are Impaired.

**Class 4. Allowed General Unsecured Claims**

(a)     Description. Class 4 consists of the Allowed General Unsecured Claims.

(b)     Treatment. On the Effective Date, each holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction, settlement, release, extinguishment and discharge of its respective claims: (i) quarterly payments of interest only at five percent (5%) per annum, or as determined by the Court, for a period of three (3) years from business operations, and (ii) a balloon payment at the end of the third year for the entire amount remaining on the Allowed General Unsecured Claims, with no prepayment penalty.

(c)     Impairment. The Class 4 Claims are Impaired.

**Class 5. Allowed Equity Interests**

(a)     Description. Class 5 consists of Equity Interests. Equity Interests consist of any share of preferred stock, common stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest.

(b)     Treatment. On the Effective Date, each holder of an Allowed Equity Interests in the Debtor shall retain their Equity Interest in the Debtor and shall receive no Distribution under the Plan on account of such Equity Interests; provided that, such Equity Interest shall be held in escrow until the Reorganized Debtor has made all payments required under the Plan. The following parties will continue to own the Reorganized Debtor: (i) John B. Kennelly will own 96.1%, and (ii) Fountains of Boynton Corporation will own 3.9%. The holders of Allowed Equity Interests shall not receive any distributions based on such Equity Interest prior to all payments being made under the Plan.

(c)     Impairment. The Class 5 Claims are Impaired.

**D.     Distributions Under the Plan**

1.     Subject to Rule 9010, and except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Debtor to the holder of each Allowed Claim, in the manner provided for in the Plan and Confirmation Order, at the address of such holder as listed on the Schedules and/or Proof of Claim as of the Confirmation Date, or other date as ordered by the Court, unless the Debtor has been notified in writing of a change of address, including by the filing of a proof of Claim by such holder that provides an address different from the address reflected on the Schedules.

2.     Except as otherwise provided for in the Plan and Confirmation Order, any payment of Cash made by the Debtor pursuant to the Plan shall be made on a quarterly basis by check drawn on a domestic bank or by wire transfer.

3.     Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

4.      No payment of Cash less than One Hundred 00/100 Dollars ($100.00) shall be made by the Debtor to any holder of a Claim unless a request therefore is made in writing to the Debtor, as applicable, or unless the Distribution is a final Distribution.

5.      When any distribution on account of an Allowed Claim pursuant to the Plan would otherwise result in a distribution that is not a whole number, the actual distribution shall be rounded as follows: fractions of ½ or greater shall be rounded to the next higher whole number and fractions of less than ½ shall be rounded to the next lower whole number. Cash to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided in the Plan.

6.      In the event that any distribution to any holder is returnable as undeliverable, the Debtor shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Debtor has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that any distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.

7.      Unless otherwise provided herein, all initial distributions and deliveries shall be made on the Effective Date. Subsequent distributions shall be made in accordance with the terms set forth in the Plan.

8.      At the close of business on the Confirmation Date, or other date ordered by the Court, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. The Debtor shall have no obligation to recognize any transfer of any Claims occurring after the Confirmation Date, or other date ordered by the Court; *provided, however,* that the foregoing will not be deemed to prohibit the sale or transfer of any Claim subsequent to the Confirmation Date, or other date ordered by the Court, and prior to the Effective Date. The Debtor shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders as of the close of business on the Confirmation Date, or other date ordered by the Court.

**E.      Procedures for Allowance or Disallowance of Disputed Claims**

**1.      Objections to and Resolution of Claims, Administrative Claims and General Unsecured Claims**

The deadline to object to any claim will be set by the Court (the "Objection Deadline"). In the event that the Debtor settles any claim objection, the Debtor may seek approval by submitting an Agreed Order in a form acceptable to the Debtor and the holder of the Disputed Claim. In the event that the Debtor and holder of a Disputed Claim do not reach a consensual resolution of the claim objection, then the Debtor will set the contested matter for hearing before the Bankruptcy Court and will provide all interested parties with notice of the date set.

If any distribution to a holder of an Allowed Claim remains unclaimed for a period of ninety (90) days after such distribution has been delivered to the holder the Allowed Claim, the amount of the Claim upon which such distribution was made shall be canceled and said claimant

shall not be entitled to any further distributions hereunder.  A distribution of funds is unclaimed, if, without limitation, the holder of an Allowed Claim does not cash a check, returns a check or if the check mailed to the holder at the address set forth in the Schedules, the Amended Schedules or set forth in a proof of claim filed by such holder is returned by the United States Postal Service or any other country's postal service as undeliverable.

### 2.      Unclaimed Funds

Any funds unclaimed for the period described of the Plan shall be forfeited by the holder and will be re-deposited in the Disbursing Agent's account to be paid over to the Court pursuant to Local Rule 3011-1(B).

### 3.      Establishment and Maintenance of Reserve

On the Initial Distribution Date and each Subsequent Distribution Date, the Reorganized Debtor shall reserve from the Distributions to be made on such dates to the holders of Allowed Claims, an amount equal to One Hundred Percent (100%) of the Distributions to which holders of Disputed Claims would be entitled under the Plan as of such dates if such Disputed Claims were Allowed Claims in their Disputed Claim Amounts, or as estimated by the Debtor or the Court in accordance with Section 6.08 of the Plan (the "**Disputed Claims Reserve**").

### 4.      Distributions Upon Allowance of Disputed Claims

The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the any Distribution Date shall receive distributions of Cash and any other consideration from the Disputed Claims Reserve from the Reorganized Debtor upon the Subsequent Distribution Date following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such Distributions shall be made in accordance with the Plan.

## F.      Executory Contracts and Unexpired Leases

The Code grants the Debtor the power, subject to the approval of the Court, to assume or reject executory contracts and unexpired leases.  If an executory contract or unexpired lease is rejected, the other party to the agreement may file a claim for damages incurred by reason of the rejection.  In the case of rejection of leases of real property, such damage claims are subject to certain limitations imposed by the Code.

Pursuant to §§ 365(a) and 1123(b)(2) of the Code, all executory contracts and unexpired leases between the Debtor and any Person shall be deemed rejected by the Reorganized Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) which previously has been assumed or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed and served prior to the Effective Date or (iii) which is listed on the Assumption List which shall be filed with the Court and served on the affected parties by no later than twenty (20) days prior to the Balloting Deadline; *provided, however*, that the Debtor or Reorganized Debtor shall have the right, on or prior to the Confirmation Date, to amend the Assumption List to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed, respectively, assumed or rejected.

The Debtor or Reorganized Debtor shall provide notice of any amendments to the Assumption List to the non-debtor parties to the executory contracts and unexpired leases affected thereby. The listing of a document on the Assumption List shall not constitute an admission by the Debtor or Reorganized Debtor that such document is an executory contract or an unexpired lease or that the Debtor or Reorganized Debtor have any liability thereunder.

## G.    Amendment, Modification or Revocation of the Plan

Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date in conformity with section 1127(a) of the Code, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122, 1123 and 1129 of the Code, and the Plan Proponent shall have complied with section 1125 of the Code. The Plan may be altered, amended or modified by the Plan Proponent at any time after the Confirmation Date in conformity with section 1127(b) of the Code, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Code and the Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

Prior to the Effective Date, the Plan Proponent, and without the approval of the Bankruptcy Court, and without notice to all holders of Claims, insofar as it does not materially adversely affect the interests of holders of Claims, may correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

## H.    Means for Implementation and Effect of Confirmation of Plan

### 1.    Discharge of Debtor

Except as otherwise provided herein or in the Confirmation Order, the rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction, discharge and release of Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtor and the Debtor in Possession, the Estate, any of the assets or properties under the Plan. Except as otherwise provided herein, (i) on the Effective Date, all such Claims against the Debtor, and Equity Interest in the Debtor shall be satisfied, discharged and released in full, and (ii) all Persons shall be precluded and enjoined from asserting against the Reorganized Debtor, its successors, its assets or properties, any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date, whether or not such holder has filed a proof of claim or proof of equity interest and whether or not such holder has voted to accept or reject the Plan. Notwithstanding the foregoing, nothing in the Plan shall release, discharge, enjoin or preclude any Claim that has not arisen as of the Effective Date that any governmental unit may have against the Debtor and nothing in the Plan shall release, nullify or enjoin the enforcement of any liability to a governmental unit under environmental statutes or regulations that any entity would

15

be subject to as the owner or operator of property after the date of entry of the Confirmation Order.

2.     **Injunction Related to Discharge**

*Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Court, all Persons who have held, hold or may hold Claims against the Debtor, or Equity Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtor the Debtor, on account of any such Claim or Equity Interest, (iii) creating, perfecting or enforcing any Lien or asserting control of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest, and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest.  Such injunctions shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.*

3.     **Injunction Against Interference with the Plan**

*Upon the entry of a Confirmation Order with respect to the Plan, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, except with respect to actions any such entity may take in connection with the pursuit of appellate rights.*

4.     **Votes Solicited in Good Faith**

The Plan Proponent has, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and on account of such solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

5.     **Term of Bankruptcy Injunction or Stays**

All injunctions or stays provided for in the Case under sections 105 or 362 of the Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

6.     **Avoidance Actions**

As of the Effective Date, pursuant to section 1123(b)(3)(B) of the Code, any and all Actions accruing to the Debtor and Debtor in Possession, including, without limitation, actions under sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Code, shall become assets of the Reorganized Debtor, and the Reorganized Debtor shall have the authority to

16

commence and prosecute such Actions for the benefit of the Estate. The Reorganized Debtor shall continue to prosecute any Action pending on the Effective Date.

Further, section 547 of the Code enables a debtor in possession to avoid transfers the debtor made while it was insolvent, to a creditor, based upon an antecedent debt, within ninety (90) days of the petition date, which enabled the creditor to receive more than it would under a liquidation. Creditors have defenses to the avoidance of such preferential transfers based upon, among other things, the transfers having occurred as part of the debtor's ordinary course of business, or that subsequent to the transfer the creditor provided the debtor with new value. In this case, the Debtor believes payments made to creditors prior to the Petition Date are not avoidable under section 547 of the Code because, among other things, the Debtor made payments while it was solvent and/or in the ordinary course of business, and such payments may not have enabled creditors to receive more than they would in a liquidation.

Notwithstanding the foregoing, prior to Confirmation, the Reorganized Debtor shall analyze payments made by the Debtor to creditors within ninety (90) days (or in the case of insiders, one year) before the Commencement Date to determine on a final basis which payments may be avoidable as preferential transfers under the Code and, if appropriate, prosecute such actions. Prior to Confirmation, the Debtor shall file a schedule of potential Avoidance Actions, if any.

**I.    Conditions Precedent to Effectiveness of Plan**

The Plan shall not become effective unless and until the conditions set forth in Section 9.01 of the Plan shall have been satisfied or waived.

**J.    Retention of Jurisdiction**

The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Case and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Code and for, among other things, the following purposes:

(a)    to hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

(b)    to determine any and all adversary proceedings, motions, applications and contested matters, and other litigated matters pending on the Confirmation Date;

(c)    to hear and determine all Actions, including, without limitation, Actions commenced by the Debtor or any other party in interest with standing to do so, pursuant to §§ 505, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Code, collection matters related thereto, and settlements thereof;

(d)    to hear and determine any objections to or the allowance, classification, priority, compromise, estimation or payments of any Administrative Claims, Claims or Equity Interests;

(e)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(f)　　to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(g)　　to issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Code;

(h)　　to consider any amendments to or modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in the Plan, the Plan Supplement, or any order of the Court, including, without limitation, the Confirmation Order;

(i)　　to hear and determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331, and 503(b) of the Code;

(j)　　to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(k)　　to recover all Assets of the Debtor and Property of the Estate, wherever located;

(l)　　to determine any Claim of or any liability to a governmental unit that may be asserted as a result of the transactions contemplated herein;

(m)　　to enforce the Plan, the Confirmation Order and any other order, judgment, injunction or ruling entered or made in the Case, including, without limitation, the discharge, injunction, exculpation and releases provided for in the Plan;

(n)　　to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following consummation;

(o)　　to hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505, and 1146 of the Code (including, but not limited to, an expedited determination under § 505(b) of the Code of the tax liability of the Debtor for all taxable periods through the Effective Date for all taxable periods of the Debtor through the liquidation and dissolution of such entity);

(p)　　to enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in the Plan and the Confirmation Order;

(q)　　to hear any other matter not inconsistent with the Code; and

(r)　　to enter a final decree closing the Case; *provided however*, that nothing in the Plan shall divest or deprive any other court or agency of any jurisdiction it may have over the Reorganized Debtor under applicable environmental laws.

**K.**     **Post-Confirmation Date Service List**

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall continue to be effective, and further notices will be sent to such Entities.

## V.     <u>CONFIRMATION OF THE PLAN</u>

**A.**     **Solicitation of Votes**

In accordance with sections 1126 and 1129 of the Bankruptcy Code, the Claims in Class 1, Class 2, Class 3 and Class 4 are impaired and entitled to vote on the Plan. An Impaired Class of Claims will have accepted the Plan if (i) the holders of at least two-thirds in amount of the Allowed Claims actually voting in the Class have voted to accept the Plan, and (ii) the holders of more than one-half in number of the Allowed Claims actually voting in the Class voted to accept the Plan, not counting the vote of any holder designated under section 1126(e) of the Bankruptcy Code or any insider. A vote may be disregarded if the Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Code. Holders of Claims valued at an unknown amount, and holders of Disputed Claims, shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan.

**B.**     **Confirmation Hearing**

The Court shall schedule the Confirmation Hearing to consider approval of this Disclosure Statement and confirmation of the Plan at the United States Bankruptcy Court for the Southern District of Florida, located at the United States Courthouse, 1515 North Flagler Drive, 8th Floor, West Palm Beach, Florida 33401. The Confirmation Hearing may be adjourned from time to time without notice except as given at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing. The Court shall set forth a deadline to file objections, if any, to the approval of this Disclosure Statement or the confirmation of the Plan.

Any objection to Confirmation must be in writing, specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim. Any such objection must be filed with the Court, and serviced so that it is received by the Court and the following parties on or before the deadline set by the Court:

> Shraiberg, Ferrara & Landau, P.A.
> Attorneys for the Plan Proponent
> 2385 N.W. Executive Center Drive, Suite 300
> Boca Raton, Florida 33431
> Attn: Bradley Shraiberg
>      Patrick Dorsey
>
> -and-
>
> Office of the U.S. Trustee
> 51 SW First Avenue, Room 1204

19

Miami, FL 33130
Phone: (305) 536-7285

## C.    Confirmation Standards

For a plan to be confirmed, the Bankruptcy Code requires, among other things, that a plan be proposed in good faith and comply with the applicable provisions of chapter 11 of the Bankruptcy Code. Section 1129 of the Bankruptcy Code also imposes requirements that with respect to each class of claims, such class has accepted the plan or such class is not impaired under the plan, that confirmation of a plan is not likely to be followed by the need for further financial reorganization, that a plan be in the best interest of creditors, and that a plan be fair and equitable with respect to each class of claims that is impaired under the Plan.

The Bankruptcy Court will confirm a plan only if it finds that all of the requirements enumerated in section 1129 of the Bankruptcy Code have been met. The Plan Proponent believes that the Plan satisfies all of the requirements for confirmation for the reasons stated below.

## VI.    FUNDING AND FEASIBILITY OF THE PLAN

## A.    Risks to the Creditors

The Plan Proponent does not anticipate that there are any significant federal tax consequences the Plan would have on Creditors. As stated above, the Disclosure Statement will not be construed to be advice on the tax, securities or other legal effects of the Plan. Each Creditor should, therefore, consult with its own legal, business, financial and tax advisors as to any such matters concerning the solicitation, the Plan or the transactions contemplated thereby.

## B.    Best Interests Test and Liquidation Analysis

With respect to each impaired Class of Claims, confirmation of the Plan requires that each holder of an Allowed Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. To determine what holders of Claims of each impaired Class would receive if the Debtor were liquidated under Chapter 7, the Court must determine the dollar amount that would be generated from the liquidation of the Debtor's assets and properties in the context of a Chapter 7 liquidation case and the assets were liquidated by a Trustee in bankruptcy. The cash amount that would be available for satisfaction of Claims would consist of the proceeds resulting from the disposition of the unencumbered assets and properties of the Debtor, augmented by the unencumbered cash held by the Debtor at the time of the commencement of the liquidation case.

The Debtor's cost of liquidation under Chapter 7 would include the fees payable to the Chapter 7 trustee, as well as those fees that might be payable to other professionals that such a trustee might engage. The foregoing types of claims and other claims that might arise in a liquidation case or result from the pending Chapter 11 case, including any unpaid expenses incurred by the Debtor during the Chapter 11 Case such as compensation for attorneys, financial advisors and accountants, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition Claims.

The Plan Proponent believes that each holder of an Allowed Claim will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date. In particular, all creditors are being paid 100% of the allowed amounts of their claims under the Plan. By definition, creditors could not be paid more in a Chapter 7 liquidation.

In addition, the Debtor filed for Chapter 11 bankruptcy, in part, to bring certain non-performing leases into performing status. Once this is accomplished the value of the Debtor's real property will increase substantially, and the Debtor already possesses substantial equity in such real property. By contrast, the real property could be sold for less than its fair market value in a 'fire sale' Chapter 7 liquidation. This reduction, in addition to Chapter 7 trustee and administrative fees, could result in less than a 100% distribution to creditors.

## C.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires a plan proponent to demonstrate that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of a debtor unless so provided by the plan of reorganization. For purposes of determining whether the Plan meets this requirement, the Plan

[Remainder of Page Intuitionally Left Blank]

Proponent has analyzed the Debtor's ability to meet its financial obligations as contemplated thereunder.

The Plan Proponent believes that it will be able to provide the payments contemplated under the Plan based on its post-petition cash flow and the substantial equity in its real property. The Debtor will file a *pro forma* financial statement within fourteen days of this disclosure statement itemizing such cash flow and payments to creditors.

Based on the foregoing, the Plan Proponent believes the Debtor will be able to provide for all payments required pursuant to the Plan. Accordingly, the Plan Proponent asserts that the Debtor is able to perform all of its obligations under the Plan, and as such, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

## CONCLUSION

For all the reasons set forth herein, the Plan Proponent believes that confirmation and consummation of the Plan is preferable to all other alternatives. The Plan provides all creditors with a 100% distribution of their Allowed Claims. Consequently, the Plan Proponent urges all eligible holders of Impaired Claims to vote to **accept** the Plan, and to complete and return their ballots so they will be received on or before the deadline set by the Court.

**DATED: May 5, 2016**

**DEBTOR IN POSSESSION:**

**FOUNTAINS OF BOYNTON ASSOCIATES, LTD.**

John Kenneily for
Fountains of Boynton Corporation,
General Partner.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on May 5, 2016.

<div style="margin-left:40%">

Respectfully Submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for the Debtor
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bshraiberg@sfl-pa.com
Email: pdorsey@sfl-pa.com

By:   /s/ Bradley S. Shraiberg
      Bradley S. Shraiberg, Esq.
      Florida Bar. No. 121622
      Patrick Dorsey, Esq.
      Florida Bar. No. 0085841

</div>

# EXHIBIT A
## Chapter 11 Plan

[*See* ECF No. 67]